Union Trust Co. of Pittsburgh, Trustee, Appellant,
*v.* Bellman et al.

Argued March 18, 1930.  Before MOSCHZISKER, C. J.,
FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Wm. M. Hall,* with him *Gaither, Portser & McCon-
nell* and *A. H. Hunter,* for appellants.—The full right,
title, and privilege of digging and taking away stone
coal to any extent grants a fee in the coal: Hosack v.

Crill, 18 Pa. Superior Ct. 90; Caldwell v. Fulton, 31 Pa. 475, 476; Miller v. Casselberry, 47 Pa. 378; Lillibridge v. Coal Co., 143 Pa. 293, 306; Klaer v. Ridgway, 86 Pa. 529.

The rights of the Union Trust Co. as trustee under the deed of trust amount to an estate in the land and not a mere lien; the deed of trust is not a simple mortgage: Patterson v. Cunliffe, 11 Phila. 564; Cedar Ave. B. & L. Assn. v. McLaughlin, 69 Pa. Superior Ct. 73, 75.

Cases which recognize a right of action in the mortgagee to recover damages for injury to his security are numerous.

The evidence shows that the coal to the extent of a large number of tons was taken out of the pit mouth by Sharpe and Earney. And this pit mouth is on the ten-acre tract of land.

*Wm. S. Rial,* with him *H. E. Marker* and *B. H. Thompson,* for appellee.—Plaintiff failed to prove that defendants mined and removed any part of the coal in this ten-acre tract. We contend that this coal never belonged to the Kensington Brick Company, but its mining and removal depended upon the consent of the Kensington Brick Company. The effect to be given to such an exception was to make it a valid exception with a restriction on enjoyment: Lillibridge v. Coal Co., 143 Pa. 293; Mandle v. Gahring, 256 Pa. 121; Acheson v. Stevenson, 146 Pa. 228.

The words "having first obtained the consent of the Kensington Brick Co." constitute a covenant restricting enjoyment of the right to mine and remove the coal: Harmon v. Burow, 263 Pa. 188; Electric City Land, etc., Co. v. Coal Co., 187 Pa. 500; Angier v. Agnew, 98 Pa. 587.

There can be no recovery in damages for the depletion of the freehold in a case such as this, by the mortgagee against the mortgagor or a stranger to the title, even though the mortgagee may have a writ of estrepement

or injunctive relief: Shields v. Pittsburgh, 252 Pa. 74; Knoll v. Ry., 121 Pa. 467.

In Pennsylvania a mortgage is both in law and in equity only a security for the payment of money and passes no title to the land,—the mortgagor is the owner of the land: Harper v. Rubber Co., 284 Pa. 444; Shields v. Pittsburgh, 252 Pa. 74, 76.

OPINION BY MR. JUSTICE WALLING, May 12, 1930:

The Kensington Brick Company, a corporation, being the owner of certain lands in Westmoreland County, in 1896, executed thereon a mortgage of $50,000 to the Union Trust Company of Pittsburgh, as trustee, to secure the payment of an issue of corporate bonds, maturing in 1906. This mortgage embraced several parcels of land, including a ten-acre tract near the Allegheny River. As to the latter, the mortgage contained a stipulation as follows: "Subject to the right-of-way of the Allegheny Valley Railway Company and saving and reserving to Samuel Plumer, Arnold A. Plumer and Henry B. Plumer, executors of the estate of Margaret Plumer, deceased, or their assigns, all the coal that may underlie said above described land, with right to mine and remove the same, having first obtained the consent of the Kensington Brick Company, party of the first part hereto." In 1924, the debt being unpaid, the mortgage was foreclosed and the entire mortgaged premises purchased by the plaintiff trustee for $800. In the following year (1925), the trustee brought this suit in trespass against the defendants, R. H. Bellman, Edward Earney and W. D. Sharpe, averring that, during the years 1920, 1921, 1922 and 1923, they had mined and removed large quantities of coal from the ten-acre tract, by which the mortgage creditors had suffered damages to the amount of $15,000. When the case was tried, the trial judge granted a compulsory nonsuit and the refusal to remove it forms the basis for this appeal by plaintiff.

The action of the trial court was free from error. The reservation above quoted constituted a severance of the coal from the surface of the ten-acre tract, if not theretofore severed, whereby it became or continued a separate estate (Lillibridge v. Coal Co., 143 Pa. 293; Hosack v. Crill, 18 Pa. Superior Ct. 90), and was not embraced in the mortgage nor did it pass to plaintiff, as purchaser at the sheriff's sale. By the plain terms of the reservation, the title to the coal remained or vested in the Plumer estate. The effect of the reservation was to except the coal from the mortgage. See Mandle v. Gharing et al., 256 Pa. 121; Whitaker v. Brown, 46 Pa. 197. The title thereto was not destroyed by the clause requiring the consent of the brick company to its removal any more than the title to land would be defeated by a building restriction thereon. See Harmon v. Burow, 263 Pa. 188. While the restriction as to the mining was valid, it did not affect the title to the coal. See Electric City Land, etc., Co. v. Coal Company, 187 Pa. 500; also Acheson v. Stevenson, 146 Pa. 228. This restriction as to the mining was doubtless inserted so that the excepted coal might not be removed in any manner which would interfere with the operations of the brick company. It was a limitation on the right of removal, not a destruction of the title. The testimony tended to show that the brick company had gone out of business prior to the commission of the alleged trespasses; whether it ever gave consent to mining of the coal in the ten-acre tract did not appear.

Moreover, there is not a word of evidence that the defendant, Bellman, was in any manner concerned in the mining of coal on the ten acres or in this neighborhood. But under the Act of June 29, 1923, P. L. 981, recovery might be had against the other defendants, if justified by the evidence. As to that, the testimony tended to show that Earney and Sharpe were engaged in the coal business in the neighborhood and that they

brought some coal, an indefinite amount, out of a pit mouth on the ten acres, but no one said it, or any coal, was mined thereon. It is just as probable that it was mined in other tracts and by subterranean passages brought to the surface through this pit mouth. The witnesses said they did not know where the coal came from. It was for the plaintiff not only to show ownership of the coal in the ten acres, but that the defendants removed it therefrom. Having failed to do either, the nonsuit was properly granted. The question of a mortgagee's right to recover for an injury to the premises, while in the possession of the mortgagor, is interesting, but need not be decided here.

The order denying the motion to take off the compulsory nonsuit is affirmed.