Caplan *v.* Saltzman, Appellant.

Argued March 13, 1962.   Before BELL, C. J., MUS-MANNO, JONES, COHEN and EAGEN, JJ.

 reargument refused May 4, 1962.

*John A. Metz, Jr.,* with him *Benjamin R. Rothman, Herman L. Foreman, Guy L. Warman,* and *Metz, Cook, Hanna & Kelly,* for appellant.

*Walter M. Newman,* with him *Kalman A. Goldring, Marshall J. Conn, Leslie I. Cohen,* and *Ryan, Newman, Geer and Goldring,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, April 17, 1962:

This is an appeal from a final decree in equity ordering appellant to file an account. The question involved is the applicability of the parol evidence rule.

Defendant-appellant and plaintiff-appellee, from January 1, 1949, to May 15, 1954, carried on a so-called joint venture of selling, installing and providing materials for the improvement and modernization of houses. Defendant had charge of the books and records of the business and made distribution yearly of the profits.

On May 15, 1954, plaintiff gave written notice to the Mellon National Bank and Trust Company that the joint venture was dissolved as of the date of the bank's receipt of his notice.

On May 22, 1954, plaintiff and defendant went together to the Butler Office of the Mellon National Bank and Trust Company and in the presence of James O. Howard, Credit Manager of the Installment Loan Department, and Kenneth Noell, Jr., Assistant

Manager of said office, both signed a writing, prepared by the defendant, or his counsel, reading as follows:

"AGREEMENT

"Harry K. Saltzman and Jack Caplan have been associated with each other in joint business ventures for the past several years, but are ending all association and business relationships with each other as of this date.

"The purpose of this writing is to formally acknowledge to each other and to all other persons that *an accounting** of all profits and losses due to past business ventures between Harry K. Saltzman and Jack Caplan *has been made and full distribution of said profits and losses has been made* and neither party owes any monies to the other nor to any third parties as of this date on account of the business association between Harry K. Saltzman and Jack Caplan. It is also the understanding and agreement that any and all business dealings and ventures that shall be engaged in after this date by either Harry K. Saltzman or by Jack Caplan shall be each individuals own separate business dealing, and neither party shall owe any duty or obligation to the other.

"The parties hereto also desire to avoid any possibility that any one of them personally or any one's heirs in the future may make claim upon the other or the other's heirs for any reason for anything due to the past business relationship conducted by Harry K. Saltzman and Jack Caplan.

"Now, therefore Harry K. Saltzman for himself, his heirs and assigns releases and discharges Jack Caplan, his heirs and assigns absolutely and forever from any and all claims he has or may have against Jack Caplan for any reason whatsoever from the beginning of the world to this date, and Jack Caplan for himself, his heirs and assigns releases and discharges Harry K.

---

* Italics throughout, ours.

Saltzman, his heirs and assigns absolutely and forever from any and all claims he has or may have against Harry K. Saltzman for any reason whatsoever from the beginning of the world to this date.

"In witness whereof, the parties hereto have set their hands and seals this 22nd day of May, 1954.

"sgd. JACK CAPLAN (SEAL)

"sgd. H. K. SALTZMAN (SEAL)

"Witness

"James O. Howard

"Notary Public"

Plaintiff read this agreement in the presence of Mr. Howard before signing it and stated to Mr. Howard that he had read it and understood it before signing it.

The Chancellor found that defendant from time to time received from plaintiff informal accounts of the earnings and expenditures of their business and of the amount of profit which was due defendant, but that these periodic accounts were not "detailed" accounts.

On May 22, 1954, defendant gave plaintiff two checks, one for $200 and the other for $1800, the latter of which recited, "This check is tendered in full payment as per signed release", signed "Jack Caplan", who was the payee and is the present plaintiff. The lower Court, in its adjudication, said:

"Although part of plaintiff's testimony (that in respect to where and under what circumstances he signed the Release Agreement of May 22nd, 1954, and cashed defendant's checks for $200.00 and $1,800.00) is patently untrue in view of the testimony of officers of the Mellon National Bank and Trust Company in Butler, Pennsylvania, the evidence as a whole is sufficent to overcome defendant's contention that said release is a bar to plaintiff's right to a detailed, formal accounting of the business in which plaintiff and defendant were engaged together from January 1, 1949 to May 22, 1954." We can find no such evidence.

Notwithstanding the Agreement and the release above set forth, and notwithstanding there was no averment (and proof by clear and convincing evidence) that the agreement and release were executed as a result of fraud, accident or mutual mistake—the Chancellor held that the release was invalid because of a failure of consideration, namely, a promise by defendant that a detailed formal account would be prepared and an accurate and full distribution of profits made in the near future. We have been unable to find any such promise in the testimony of plaintiff or of any witness, but if we assume arguendo that there was sufficient evidence to justify a finding* that there was such an oral promise prior to the written agreement, the evidence of this prior parol promise and its breach would be inadmissible and insufficient to vary and negate the written Agreement.

Although many attempts have been made to nullify, undermine, evade, circumvent and negate the modern parol evidence rule, the rule is now firmly established: Where the written contract covers or purports to cover the entire agreement of the parties, and there

---

* The only evidence which could remotely justify such a conclusion is the following language from the stipulation which was derived from plaintiff's unprinted Exhibit 6: "On June 8, 1959 Appellee and his wife, Rose Caplan, filed in the Tax Court of the United States at Docket No. 80758 a Petition for Redetermination of an Alleged Deficiency set forth in a notice to them from the Commissioner of Internal Revenue dated June 4, 1959." In said notice (a ninety day letter) the Commissioner asserted additional income was taxable to Jack Caplan and Rose Caplan, his wife, for 1952 "To correct and adjust income from the partnership of Saltzman, Caplan, Perilman & Saltzman"; and for 1953 "To reflect increase in partnership income from the partnership of Saltzman, Caplan, Perilman & Saltzman"; and for 1954 "To reflect increase in income from the partnership of Saltzman, Caplan and Saltzman." There was no evidence as to what happened to Caplan's petition for redetermination of the above mentioned alleged deficiencies.

is no averment and proof that anything was omitted therefrom by fraud, accident, or mistake, all prior and contemporaneous negotiations, representations and verbal agreements are superseded by the written agreement, and parol evidence is inadmissible to alter or contradict or vary or add to or subtract from or modify or supersede the written contract: *Pellegrene v. Luther,* 403 Pa. 212, 214, 169 A. 2d 298; *Fessman Estate,* 386 Pa. 447, 450-451, 126 A. 2d 676; *Bardwell v. The Willis Co.,* 375 Pa. 503, 100 A. 2d 102; *Phillips Gas and Oil Co. v. Kline,* 368 Pa. 516, 519, 84 A. 2d 301; *Grubb v. Rockey,* 366 Pa. 592, 79 A. 2d 255; *Walker v. Saricks,* 360 Pa. 594, 63 A. 2d 9; *Gianni v. Russell & Co., Inc.,* 281 Pa. 320, 126 A. 791; *Speier v. Michelson,* 303 Pa. 66, 154 A. 127; *O'Brien v. O'Brien,* 362 Pa. 66, 66 A. 2d 309; *Russell v. Sickles,* 306 Pa. 586, 160 A. 610. Cf. also, *Emery Estate,* 362 Pa. 142, 66 A. 2d 262.

" 'The Parol Evidence Rule has had a checkered career in Pennsylvania. Now that it has been well and wisely settled we will not permit it to be evaded and undermined by such tactics. . . .' " *Pellegrene v. Luther,* supra.

Defendant's alleged oral promise flies so flatly in the teeth of the parol evidence rule that to permit its admissibility in evidence, or to base a decree thereon, would completely destroy and wipe out the parol evidence rule.

Decree reversed, costs to be paid by appellee.

Mr. Justice O'BRIEN took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

I do not agree that appellee is precluded by the parol evidence rule from obtaining an accounting. Appellee is not attempting to alter or contradict the written agreement. Rather, he is claiming that there

has been a failure of consideration within the terms of the contract, to wit: that he never received an accounting in accordance with the agreement. Such a failure of consideration strikes to the very heart of the contractual relationship and can be proved by parol evidence. *Piper v. Queeney*, 282 Pa. 135, 127 Atl. 474 (1925); *Guaranty Trust Co. of N.Y. v. Williamsport Wire Rope Co.*, 222 F. 2d 416 (1955), 15 P.L.E. Evidence §302, p. 11 (1959); 2 Henry, Pa. Evid., 4th Ed., §595, p. 9 (1953).

To hold otherwise, as the majority does here, defeats the very purpose of the parol evidence rule—that is, to promote certainty in contractual relations and to prevent the perpetration of fraud by a party to an agreement. By excluding evidence of the failure of the consideration expressed in the contract, the court rewards the appellant for his shrewdness in securing appellee's release before he furnished the required accounting, and, thereby, permits him to suppress facts which might or might not reveal fraud on his part.

In settling accident cases, it is common practice for insurance companies to require claimants to sign releases wherein receipt of payment is acknowledged. Only *after* a claimant has returned the signed release does the insurer send a check in discharge of its obligation. Would this court hold that a claimant would be precluded by reason of such a signed release from attempting to show that a check was never sent by the insurer? I think not.

In the present situation, appellant suffers little from being required to offer proof that a complete and accurate accounting was given appellee. On the other hand, appellee is severely harmed if he had not received his rightful share of the profits earned in his business activities with appellant.

Mr. Justice BENJAMIN R. JONES joins in this dissenting opinion.